NOT FOR PUBLICATION                                                                          CLOSED

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CARL EAKLES, : | |
| Plaintiff, : | |
| V : | CIVIL ACTION NO. 07-3016 (JLL) |
| CORRECTIONAL MEDICAL SERVICES, : JOHN HOCHBERG, M.D., ET. AL., : | OPINION |
| Defendant. : | |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Correctional Medical Services, Inc.'s and Dr. John Hochberg's ("Defendants") joint motion for summary judgment. [D.E. No. 55.] Defendants move for summary judgment with respect to *pro se* Plaintiff Carl Eakles ("Mr. Eakles") claims brought pursuant to 42 U.S.C. § 1983. No oral argument was held. Fed. R. Civ. P. 78. For the reasons set forth in this Opinion, Defendants' motion is granted in its entirety.

## I.     BACKGROUND & FACTS

The facts herein are set forth in Defendants' Statement of Material Facts. Since Mr. Eakles never filed a counter-statement of facts, the Court will accept Defendants' facts as true, with appropriate record support.

Mr. Eakles is an inmate of the New Jersey Department of Corrections ("NJDOC") at the Adult Treatment and Diagnostic Center ("ADTC") in Avenel, New Jersey. Defendant Correctional Medical Services, Inc. ("CMS") was a private corporation providing medical services in 2005 for the NJDOC. Defendant Dr. John Hochberg was an independent contractor

of CMS at the ADTC.

Mr. Eakles alleges that Defendants violated his Eighth Amendment rights. Specifically, Mr. Eakles alleges that he received a prophylactic medication – Permethrin – for a scabies outbreak that caused him to lose consciousness, strike his head, and that he received inadequate care for the resulting injuries.

The medical records submitted in support of Defendants' motion indicate that Mr. Eakles received medical care for his injuries at Robert Wood Johnson University Hospital,[1] Saint Francis Medical Center,[2] and the infirmary at the ADTC.[3]

## II.     LEGAL STANDARD

### A. Summary Judgment

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions,

---

[1] See Def.'s Br. at Exh. E, Robert Wood Johnson Discharge Summary.
[2] See Def.'s Br. at Exh. F, St. Francis Medical Center Discharge Summary.
[3] See Def.'s Br. at Exh. D, ADTC Inmate Medical History.

2

bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pa. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Where, as here, the plaintiff is proceeding pro se, the court must construe the complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); id. ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers ....") (internal quotation marks omitted).

### III.    SECTION 1983 ACTIONS

Mr. Eakles brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir 1994).

### IV.    ANALYSIS

Mr. Eakles' Complaint alleges a claim of denial of medical care in violation of his Eighth Amendment rights. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. Estelle v. Gamble, 429

U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir.1999). In order to set forth a cognizable claim for a violation of his right to adequate medical care, Mr. Eakles must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need. Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir.2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" Hudson v. McMillian, 503 U.S. 1, 9 (1992). The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary and wanton infliction of pain" or "a life-long handicap or permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d Cir.2003) (internal quotations and citations omitted); see also Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir.1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need. See Natale, 318 F.3d at 582 (finding deliberate indifference requires proof that the official knew of and disregarded an excessive risk to inmate health or safety). "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm. Farmer v. Brennan, 511 U.S. 825, 837-38 (1994). Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference. Andrews

4

v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J.2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D.Md.1982), aff'd, 729 F.2d 1453 (4th Cir.1984). Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims." White v. Napoleon, 897 F.2d 103, 110 (3d Cir.1990). "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir.1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment ultimately is shown to be mistaken, at most what would be proved is medical malpractice and not an Eighth Amendment violation. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court also has held that needless suffering resulting from the denial of simple medical care, which does not serve any penological purpose, violates the Eighth Amendment. Atkinson, 316 F.3d at 266. See also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O 'Carroll, 991 F.2d 64 (3d Cir.1993); White v. Napoleon, 897 F.2d 103 (3d Cir.1990).

Here, Mr. Eakles' allegations do not rise to the level of a constitutional violation. The record evidence contradicts Mr. Eakles' claim that he did not receive medical treatment.  In fact,

the record evidence demonstrates that Mr. Eakles received immediate and ongoing care for his injuries. Mr. Eakles struck his head on November 5, 2006. (Complaint at 4). Mr. Eakles' ADTC medical records indicate that he was found lying on the floor at 10:00 AM and was taken via ambulance at 10:30 AM to Robert Wood Johnson University Hospital ("RWJUH") where a head CT scan revealed a temporal frontopartietal subarachnoid hemorrhage and a bifrontal temporal intracranial hemorrhage. (See, Def. Br at Exhs. D & E). Subsequently, Mr. Eakles was admitted to the Intensive Care Unit ("ICU") where he was examined and supervised by both a neurologist and a neurosurgeon. (Def. Br. at Exh., E). Mr. Eakles was prescribed Tylenol with Fiorcet for headaches. (Id.) After complaining of severe nausea with vomiting episodes, Mr. Eakles was treated by a gastroenterologist with intravenous fluids and Protonix. (Id.) After experiencing episodes of bradycardia in the range of 40, but without chest pains, Mr. Eakles was examined and observed by Dr. Chen. (Id.) On November 15, 2006, a third head CT scan[4] revealed normal evaluation of the bifrontal contusion, no hydrocephalus, and no midline shift. (Id.) Furthermore, by November 15, 2006, Mr. Eakles headaches were subsiding, he was no longer on steroids or antibiotics, and the bleeding in his left ear head stopped. (Id.) On November 18, 2006, Mr. Eakles was transferred from RWJUH to St. Francis Hospital ("St. Francis") where he received follow-up care. (Def. Br at Exh. F). On November 20, 2006, Mr. Eakles was transferred from St. Francis to the infirmary at the ADTC for observation. (Id.) On November 21, 2006, Dr. Hochberg examined Mr. Eakles, determined that he was clinically sound, and proscribed a cholesterol lowering agent. (Def. Br. at Exh. D). Mr. Eakles was discharged from the infirmary on November 21, 2006. On December 12, 2006, Mr. Eakles was examined in the Neurology Chronic Care Clinic where he was not found to be in acute distress. (Id.) On December 20,

---

[4] Prior to November 15, 2006, a follow-up head CT scan was performed. In total, Mr. Eakles received three ehad CT scans at RWJU.

2006, Mr. Eakles complained of lightheadedness and a physician advised Mr. Eakles to rise slowly as he continued to heal from his injury. (Id.)  On March 8, 2007, Mr. Eakles complained of dizziness. (Id.)  On March 15, 2007, Mr. Eakles was diagnosed with positional vertigo. (Id.)  On April 14, 2007, Mr. Eakles was diagnosed with chronic headaches and prescribed Ibuprofen. (Id.)  On May 17, 2007, Mr. Eakles reported fewer "dizzy spells" and Dr. Smyczek diagnosed him with benign positional vertigo that was improving. (Id.)  As stated above, the record evidence supports Defendant's contention that Mr. Eakles received immediate and adequate care each time he suffered from or complained of an ailment resulting from striking his head on November 5, 2010.  Mr. Eakles has failed to produce any proofs to contradict Defendants' contention that he received immediate and adequate care for his injuries.  Mr. Eakles has also failed to provide any proofs suggesting that he was prevented from receiving the needed or recommended treatment for his injuries.  To the extent that Mr. Eakles argues that the treatment he received was not the "proper" treatment, such a claim does not rise to the level of a Constitutional violation.  Consequently, based on these allegations alone, even if true, this Court finds that there was no denial of medical treatment that would constitute an Eighth Amendment violation.  See generally, Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

## V.     CONCLUSION

For the foregoing reasons, Defendant's motion is granted in its entirety. An appropriate order accompanies this opinion.


DATED: December   13, 2010                    /s/Jose L. Linares_____
                                              UNITED STATES DISTRICT JUDGE